IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **ESTATE OF WILLIAM MADDEN, et al.** ) | |
|     **Plaintiffs,** ) | |
| **v.** ) | **Civil Action No.: 1:21-cv-00672-SAG** |
| **SOUTHWEST AIRLINES, CO.** ) | |
|     **Defendant.** ) | |
| ) | |

**SOUTHWEST AIRLINES CO.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Southwest Airlines Co. ("Defendant" or "Southwest") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In support thereof, Defendant states as follows:

### I. INTRODUCTION

Southwest is incredibly sympathetic to the many people worldwide, including Carol Madden, who have lost family members to COVID-19. However, the blame laid on Ms. Madden's employer for the death of her husband in the Complaint is misplaced. The Complaint seeks to hold Southwest liable for Mr. William Madden's contraction of COVID-19 from Ms. Madden, after she was allegedly exposed at a training session she attended during the course of her employment as a Southwest flight attendant. While Southwest strongly denies the allegations that it failed to meet the requisite standard of care when implementing COVID-19 health and safety procedures to protect its employees at the training, the veracity and weight of those alleged facts have no bearing on the instant motion to dismiss. Even taking all of the allegations as true,

Plaintiff's Complaint fails to allege the required elements of both the negligence and the gross negligence claims.

The negligence and gross negligence claims asserted in the Complaint relate exclusively to Mr. Madden's contraction of and subsequent death from COVID-19. Compl. at ¶¶200-236. In order to survive a motion to dismiss, both negligence and gross negligence claims require a plausible allegation that the defendant owed the injured person (Mr. Madden) a duty of care. ***While it is true that an employer owes an employee a duty of care to provide a reasonably safe work environment, that duty does not extend to members of the employee's household.*** Maryland law is clear that an employer does not owe a duty of care to an employee's spouse, including, specifically, in the context of the transmission of diseases contracted at work. *Adams v. Owens-Illinois, Inc.*, 119 Md. App. 395, 705 A.2d 58 (1998)(finding an employer owed no duty to the wife of an employee who alleged she was exposed to asbestos as a result of handling her husband's clothing); *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 879 A.2d 1088 (Md. 2005)(finding an employer owed no duty to the wife of an employee who alleged she was exposed to HIV as a result of her husband's exposure at work). At no point was Mr. Madden an employee of Southwest, nor did Mr. Madden maintain any type of special relationship with Southwest. Consistent with *Adams* and *Doe*, the facts alleged here do not support the legal claims. Plaintiff's Complaint does not and cannot plausibly allege that Southwest owed Mr. Madden a duty of care, therefore the Complaint must be dismissed.

## II.     STATEMENT OF FACTS

On March 17, 2021 Plaintiff Carol Madden filed this wrongful death action on behalf of herself and survival action on behalf of the Estate of her late husband William Madden, alleging

claims of both negligence and gross negligence against Southwest arising out of Mr. Madden's contraction of COVID-19 and subsequent death.

According to the Complaint, at all times relevant to this case, Ms. Madden was employed as a flight attendant by Southwest. Compl. at ¶8. As an active flight attendant, Ms. Madden was required by the Federal Aviation Administration ("FAA") to attend Recurrent Training and maintain a Certificate of Demonstrated Proficiency ("Certificate"). Compl. at ¶¶24-26. Southwest was required to direct Ms. Madden to attend this Recurrent Training to maintain her Certificate if she wished to continue to work as an active flight attendant. Compl. at ¶28.

Ms. Madden attended Recurrent Training on July 13, 2020, at the Baltimore Washington International Airport. Compl. at ¶31. During the training, groups of ten (10) participant flight attendants at a time, including Ms. Madden, were required to demonstrate various proficiencies including the ability to use various safety devices onboard an aircraft. Compl. at ¶34.

Plaintiff's Complaint alleges that during this Recurrent Training Southwest failed to implement safety and health procedures to prevent the participant flight attendants from contracting COVID-19. Plaintiff identifies various alleged failings including: (a) failing to screen participant flight attendants in the training session, (b) failing to screen instructors in the training session, (c) failing to exclude those that had been exposed to COVID-19, (d) failing to enforce mask policies that would have lessened transmission,[1] (d) failing to implement safe distancing requirements, (e) failing to sanitize equipment in shared and common use, and (f) failing to implement contact tracing that would have prevented transmission after-the-fact or alerted participant flight attendants at an early time to exposure. Compl. at ¶¶204; 235.

---

[1] Plaintiff's Complaint admits that participant flight attendants were required to wear masks, but claims failure to instruct trainees as to how to wear masks and as to what kind of masks to wear. Compl. at ¶41.

3

The Complaint alleges that during the Recurrent Training Ms. Madden was exposed to COVID-19 and that exposure was caused by Southwest's failure to exercise a standard of care that would have prevented transmission of the virus. Compl at ¶¶98-99. The Complaint alleges that Ms. Madden transmitted COVID-19 to her husband. Compl at ¶186. The Complaint does not actually allege a date that Ms. Madden tested positive for COVID-19, but alleges that Mr. Madden tested positive for COVID-19 on August 1, 2020. Compl. at ¶¶145-148.

Although the Complaint alleges that Southwest was responsible for Ms. Madden's illness, nowhere does the Complaint specifically allege that Ms. Madden contracted COVID-19 during the training from a fellow flight attendant or instructor. The reason for this is, of course, because it is impossible to know precisely where or when Ms. Madden caught the virus that has caused a global pandemic. Furthermore nowhere does the Complaint allege that Mr. Madden was exposed to COVID-19 at the Recurrent Training, of course, because he was not present at the Recurrent Training. Finally, the Complaint does not allege that Mr. Madden was a Southwest employee, of course, because he was not a Southwest employee – the fatal flaw in the Complaint.

The factual allegations within the Complaint are plainly insufficient to support Plaintiff's negligence and gross negligence claims under established Maryland law and therefore must be dismissed.

### III. STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a complaint need only satisfy Rule 8(a) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified that, in order to survive a motion to dismiss, the claim

"must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While a court must accept well-pleaded factual allegations as true, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*; *Twombly*, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

Motions to Dismiss are important legal tools that support judicial efficiency and help both the court and litigants avoid unnecessary and costly litigation. "The purpose of a motion to dismiss is to 'expedite and simplify the pretrial phase of federal litigation while at the same time promoting the just disposition of civil cases.'" *Googerdy v. N.C. Agric. & Tech. State Univ.*, 386 F. Supp. 2d 618, 623 (M.D.N.C. 2005) quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1342 (3d ed. 2004). *See also Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)(finding that testing the formal sufficiency of the statement of the claim for relief found in a plaintiff's complaint is the very purpose for Federal Rule of Civil Procedure 12(b)(6)); *Superior Performers, Inc. v. Ewing*, No. 1:14cv232, 2015 U.S. Dist. LEXIS 79709, at *10

(M.D.N.C. June 19, 2015)(permitting defendants to file a second motion to dismiss finding "the interests of judicial efficiency do strongly favor considering the Movants' successive Motion to Dismiss in this instance."); *Sansone v Ocean Acci. & Guarantee Corp.*, 228 F. Supp. 554, 8 Fed. R. Serv. 2d (Callaghan) 12B.22, Case 2 (ED La 1964)(noting that the purpose of motion to dismiss procedure is to pierce the pleadings and to assess proof in order to see whether there is genuine need for trial.) Motions to dismiss, when appropriate, weed out cases that cannot make justiciable claims and avoid all of the inherent costs associated with lengthy discovery and trial.

The claims asserted in the Complaint reflect an understandably emotional response to a devastating personal loss, but they are not actionable under the law. As detailed more fully below, it is in the interest of economic and judicial efficiency for the Court to dismiss Plaintiff's claims at this time. Plaintiff's claims against Southwest arise exclusively from Mr. Madden's contraction of COVID-19. There are no true facts that Plaintiff can allege that would support the allegation that Southwest owed Mr. Madden, the spouse of an employee, a legal duty and therefore it is in the interest of judicial efficiency for the Court to dismiss Plaintiff's claims at this stage in the litigation.

## IV. ARGUMENT

### a. Plaintiff's Complaint Fails to State Claims for Survival Actions and Wrongful Death Actions for Negligence and Gross Negligence under CJP §6-401 and CJP §3-904

Under Maryland law, a cause of action in negligence requires that the plaintiff show: (1) that the defendant owed a duty to the person who was injured; (2) that the defendant breached that duty; (3) the existence of an actual injury or loss; and (4) that the injury or loss proximately resulted from the defendant's breach of the duty. *Ferguson v. Associated Builders & Contractors, Inc.*, Civil Action No. RDB 06-619, 2007 U.S. Dist. LEXIS 107107, at *21 (D. Md. Jan. 30, 2007). *See,*

6

*e.g., Rosenblatt v. Exxon Co., U.S.A*., 335 Md. 58, 642 A.2d 180, 188 (Md. 1994) (citations omitted). A claim of gross negligence requires more egregious conduct on the part of the defendant. *See Taylor v. Harford County Dep't of Social Servs.*, 384 Md. 213, 862 A.2d 1026, 1034 (Md. 2004) (characterizing "gross negligence" as "[a]n intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another . . .") (citation omitted). As noted above, both negligence and gross negligence claims require the establishment of a duty on the part of Southwest to Mr. Madden. The allegations within Plaintiff's Complaint do not establish any cognizable duty under the law which Southwest owed to Mr. Madden because he was the spouse of a Southwest employee. Accordingly, Plaintiff fails to adequately plead her negligence and her gross negligence claim; therefore, her Complaint must be dismissed.

i. *Southwest did not owe a duty to Mr. Madden*

Plaintiff's Complaint claims that Southwest owed Ms. Madden and Mr. Madden "the duty to exercise reasonable care to protect them from injury." Compl. at ¶201. This statement is incorrect. ***While it is true that employers generally owe a duty to employees to maintain a safe work environment, that duty does not extend non-employee members of the employee's household.*** Maryland law does not support Plaintiff's position that Southwest is liable for Mr. Madden's secondary "take home" exposure to COVID because Southwest did not owe him a duty of care.

The most prevalent case law in Maryland relating to "take home" exposure to diseases and dangerous substances involves asbestos related personal injury cases. In asbestos cases, whether a cause of action exists for "take home" exposure "depends, in large part, on [...] who is being sued and on which theory*." Ga. Pac., LLC v. Farrar,* 432 Md. 523, 532, 69 A.3d 1028, 1033 (2013).

7

When cases are filed against employers, plaintiffs' complaints typically claim that an employer's duty to exercise reasonable care to provide a safe workplace for employees extends to employees' household members. *Id*. Maryland courts have universally held that the duty to provide a safe work environment extends only to employees and others exposed while in the workplace and not household members like Mr. Madden. *Id.*

In one such case, *Adams v. Owens-Illinois, Inc.*, 119 Md. App. 395, 705 A.2d 58 (1998), plaintiff Mary Wild filed suit against her husband's employer, Bethlehem Steel, alleging that she contracted asbestosis as a result of contact with asbestos related materials through washing her husband's clothing after work. *Id*. at 407. When assessing Ms. Wild's claim against Bethlehem Steel, the court instructed the jury that it must find all four elements of negligence including: (1) duty (2) breach of that duty (3) "a legally cognizable causal relationship between Bethlehem's breach of duty and the harm suffered by Ms. Wild" and (4) damages. *Id.* at 410. The court's analysis did not extend beyond the first element. The court noted that an employer owes two relevant duties to its *employees* including: (1) to use reasonable care to furnish a reasonably safe place to work and (2) to "instruct his employee concerning the dangers of the work known to him which are not obvious and cannot be discovered by the exercise of reasonable care by the employee" *Id*. at 411. The court held that because Ms. Wild was not an employee, Bethlehem Steel did not owe her either duty. *See Id* ("Bethlehem owed no duty to strangers based upon providing a safe workplace for employees"). The court noted policy reasons for this holding, stating "[i]f liability for exposure to asbestos could be premised on Mary Wild's handling of her husband's clothing, presumably Bethlehem would owe a duty to others who came in close contact with Edwin Wild, including other family members, automobile passengers, and co-workers. Bethlehem owed

no duty to strangers [including employees' spouses] based upon providing a safe workplace for employees." *Id.*

Mr. Madden's relationship with Southwest is akin to Ms. Wild's relationship with Bethlehem Steel. In *Adams* "Bethlehem's duty to its employees was not an issue, because Mary Wild was not an employee." *Adams v. Owens-Illinois, Inc.*, 119 Md. App. 395, 411, 705 A.2d 58, 66 (1998). Similarly, Southwest's duty to its employees is not an issue in this case because Mr. Madden was not an employee of Southwest. Mr. Madden, like Ms. Wild, was a stranger to his spouse's employer. The public policy concerns that the Court considered in *Adams* are equally, if not more present with COVID-19 cases. If liability exposure could be premised on contact with employees, then employers would owe a duty to countless non-employees depending on their employees' quarantine practices and general exposure to others outside of work. It is contrary to public policy to impose a duty on employers that is based on their employees' conduct outside of the scope of their employment duties.

The Maryland Court's holding in *Adams* is consistent with holdings in other courts including *Miller v. Ford Motor Co. (In re Certified Question),* 740 N.W.2d 206, 219-21, 479 Mich. 498 (Mich. 2007)(expressing concern that recognizing an employer's duty for take-home asbestos would expose an employer to a "limitless pool of plaintiffs" encompassing anyone who came into contact with an employee while he was wearing his work clothes); *In re New York City Asbestos Litig.,* 5 N.Y.3d 486, 840 N.E. 2d 115, 122, 806 N.Y.S.2d 146 (N.Y. 2005)(stating that finding duty in take-home asbestos cases would create "limitless liability" for employers, extending duty to a babysitter or laundry worker who washes the employee's clothes).

Maryland Courts' reluctance to extend duties to third parties without direct relationships with defendants ranges even beyond the context of asbestos litigation.

In *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 879 A.2d 1088 (Md. 2005) the Maryland Court of Appeals answered two certified questions concerning an employer/manufacturer's duty of care to its employee's spouse in a similar context to this case. In *Doe*, a plaintiff sued her husband's employer for negligence after he became infected with HIV at work and then transmitted it to her. The Complaint alleged that the employer manufactured two strains of HIV, HIV 1 and HIV 2. *Id*. at 410. The employee, a laboratory technician, handled the HIV strains as a part of his job duties. *Id.* at 411. The employee contracted HIV and subsequently transmitted it to his spouse. *Id*. at 412.

The plaintiff in *Doe* argued that the employer owed her a duty of care as the spouse of an employee who had a foreseeable risk of contracting HIV from her husband. *Id.* at 413. She claimed that the employer should have known that the employee was or could have been infected with the HIV the employer manufactured and that he risked transmitting the disease to his wife. *Id.* The plaintiff also claimed that the interests of society in protecting public health and limiting the spread of disease are furthered by imposing a duty of care on the employer, the entity in a position to prevent further contamination and spread of disease. *Id.*

The employer maintained that it did not owe a duty of care to the plaintiff because the relationship was too attenuated. *Id.* The employer noted that the foreseeability alone is not sufficient to establish a legal duty. *Id.* The employer argued that if it were to owe a duty of care to the plaintiff then it would also owe a duty to an indeterminate number of people, stretching tort duty beyond manageable bounds. *Id.*

The court agreed with the employer and found that even though the harm was foreseeable, the employer did not owe a duty to the plaintiff who was a third party – a spouse of an employee – because a special relationship did not exist with the plaintiff (*i.e.* she was never an employee of

10

252927795v.1

the employer, she was never tested by the employer, and she had never had any contact with the employer). *Id.* The court noted that the plaintiff's "proposed duty of care to her would create an expansive new duty to an indeterminate class of people." *Id.* at 420.

Plaintiff's claims on behalf of Mr. Madden pose similar concerns. If the Court imposes a duty of care to an employee's husband, particularly in the context of the highly transmissible COVID-19 virus, it would expand an employer's duty of care to an indeterminate class of people with whom employers have absolutely no contact. Plaintiff's Complaint alleges that it was foreseeable that Mr. Madden would contract COVID-19 based on the alleged (and disputed) failings to meet the applicable standard of care, but as noted above, foreseeability is not enough. Compl. at ¶¶185; 187; 222. In order for Southwest to be liable in negligence for Mr. Madden's alleged wrongful death, Plaintiff would need to allege that Southwest maintained a special relationship with Mr. Madden. The Complaint is devoid of these allegations because they cannot be truthfully alleged. Mr. Madden was not an employee and he did not have contact with Southwest. Under Maryland law, an employer owes no special duty to the spouse of an employee. Accordingly, the negligence claim must fail.

The holding in *Doe* is consistent with other Maryland cases that have interpreted defendants' duty to third parties as narrow to non-existent absent the existence of a special relationship that is not present in this case. *See Lemon v. Stewart*, 111 Md. App. 511, 682 A.2d 1177 (1996)(holding that the common law duty of care owed by a health care provider flows only to the patient, and finding no special relationship or duty on the part of a health care provider to inform persons other than the patient of a patient's positive HIV status); *Dehn v. Edgecombe*, 384 Md. 606, 610-611, 865 A.2d 603, 605-06 (2005)(finding that a wife did not have an independent cause of action against her husband's primary care physician for alleged medical malpractice

where, following the husband's vasectomy, the wife became pregnant because a special relationship did not exist to give rise to a duty).

Southwest did not owe Mr. Madden any duty of care and therefore cannot be found liable for negligence or gross negligence under Maryland law.

### b. The Complaint should be dismissed with prejudice

A district court has the discretion to grant a motion to dismiss with or without prejudice. *Hinks v. Bd. of Educ. of Harford Cnty.*, Civ. No. WDQ-09-1672, 2010 WL 5087598, at * 2 (D. Md. Dec. 7, 2010). Dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim. *Id.* (citing *Cozzarelli v. Inspire Pharms., Inc..*, 549 F.3d 618, 630 (4th Cir. 2008)); *Mayes v. Bd. of Educ.,* No. PJM 13-3770, 2014 U.S. Dist. LEXIS 111589, at *7-8 (D. Md. Aug. 11, 2014). In this case there are no facts that Plaintiff could plausibly plead that would establish the existence of a legal duty owed by Southwest to Mr. Madden. Allowing Plaintiff to file an amended complaint would only delay its inevitable dismissal and force Defendant to file another motion to dismiss. Repeatedly litigating meritless claims is not in the interest of any party or the Court. Therefore, the Court should dismiss Plaintiff's claims with prejudice.

WHEREFORE, Defendant Southwest respectfully requests this Court dismiss Plaintiff's claims with prejudice and grant all other relief the Court deems appropriate and just.

Respectfully Submitted,

Dated: April 23, 2021          */s/ Kathryn A. Grace*
Kathryn A. Grace, Esq. Bar No. 18770
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
703.852.7869 (Phone)
703.245.9301 (Fax)
kathryn.grace@wilsonelser.com

12

Ashley Wetzel, Esq. Bar No. 20196
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
500 East Pratt Street, Suite 600
Baltimore, MD 21202-3173
410-962-0312 (Phone)
410-962-8758 (Fax)
ashley.wetzel@wilsonelser.com

William J. Katt, Esq.
Admitted Pro Hac Vice
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
740 N. Plankinton Avenue, Suite 600
Milwaukee, WI 53203
414.292.3018 (Phone)
414.276.8819 (Fax)
william.katt@wilsonelser.com

***Attorneys for Defendant Southwest Airlines Co.***

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of April, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kathryn A. Grace*
Kathryn A. Grace, Esq.
Bar No. 18770
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
703.852.7869 (Phone)
703.245.9301 (Fax)
kathryn.grace@wilsonelser.com
*Attorneys for Defendant Southwest Airlines Co.*

252927795v.1